***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Harris and the briefs and arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence and upon reconsideration, the Full Commission modifies in part and affirms in part the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Commission has jurisdiction of the parties and of the subject matter. *Page 2 
2. All parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
4. The carrier on the risk for defendant-employer in this claim is Forestry Mutual Insurance Company.
5. Plaintiff sustained an admittedly compensable injury on August 28, 2005 arising out of and in the course of his employment with defendant-employer.
6. An employment relationship existed between plaintiff and defendant-employer on August 28, 2005.
7. Based on the Form 22, plaintiff's average weekly wage is $892.35, yielding a compensation rate of $594.92. There is an issue as to whether the average weekly wage should be adjusted based onper diem and a vehicle provided to plaintiff by defendant-employer.
8. Defendants filed a Form 33 on October 31, 2007 citing, "Defendants request a hearing in order to obtain an order for payment of permanent partial disability rating pursuant to N.C. Gen. Stat. § 97-31 for Plaintiff's left leg."
9. Mediation was held and impassed on February 24, 2009.
 *********** EXHIBITS
The following documents were accepted into evidence as stipulated exhibits:
 • Exhibit 1: Executed Pre-Trial Agreement
 • Exhibit 2: Industrial Commission forms and filings
 • Exhibit 3: Plaintiff's medical records *Page 3 
 *********** ISSUES
1. Whether plaintiff's right knee condition is compensable;
2. Whether plaintiff has reached maximum medical improvement for his compensable condition(s);
3. Whether plaintiff should be compelled to accept an award under N.C. Gen. Stat. § 97-31 at this time;
4. Whether there is a substantial risk that plaintiff will need medical treatment in the future for his compensable condition(s), such that an order suspending the limitations period of N.C. Gen. Stat. § 97-25.1 is appropriate;
5. What is plaintiff's average weekly wage; and
6. Whether plaintiff is entitled to attorney's fees under N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon all of the competent credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 59 years old, with a date of birth of December 11, 1950. He is approximately six feet, two inches tall and weighs about 285 pounds.
2. In his youth, plaintiff was in a motorcycle wreck and seriously injured his right knee. At that time, he underwent surgery on his right knee.
3. Plaintiff has worked for defendant-employer since 1974. Defendant-employer installs fixtures in retail stores. Since 1982, plaintiff has been a foreman, supervising installations and also performing physical work on the installations. *Page 4 
4. On August 28, 2005, plaintiff was supervising the installation of a Clinique makeup counter at a Belk's store in Valdosta, Georgia. While plaintiff was down on his hands and knees, a dolly carrying the counter, which weighed several hundred pounds, struck his left thigh and pinned his legs.
5. Plaintiff was taken to a local hospital, where he was diagnosed with a left femur fracture. He underwent surgery to repair the fracture on August 30, 2008, including the placement of a rod.
6. Before plaintiff was released from the hospital, x-rays of his right leg were also obtained to help evaluate whether the right leg had been injured in the incident. The x-rays revealed the surgery that he had undergone in his youth after the motorcycle wreck and also showed moderate degenerative changes around the patella, which the radiologist noted appeared to be chronic in nature.
7. Plaintiff was discharged from the Georgia hospital on September 4, 2005, and he returned to his home in North Carolina.
8. Defendants accepted the left leg injury as compensable but have never accepted the right leg condition as compensable.
9. On September 19, 2005, plaintiff began follow-up treatment with Dr. David Fedder, an orthopedic surgeon. Dr. Fedder obtained x-rays of both of plaintiff's knees and recommended that plaintiff begin physical therapy for his left leg. Dr. Fedder also noted that there was arthritis in the right knee. *Page 5 
10. Plaintiff did physical therapy for several months to rehabilitate his left leg, and he continued to follow up with Dr. Fedder.
11. While plaintiff was out of work, defendants paid him weekly temporary total disability compensation at the compensation rate of $594.92.
12. On February 15, 2006, plaintiff completed a functional capacity evaluation (FCE), as recommended by Dr. Fedder. The evaluator concluded that plaintiff could perform at the medium physical demand level for eight hours per day. Based on the FCE results and a job description for plaintiff's position with defendant-employer, the evaluator further concluded that plaintiff could return to his pre-injury position, as it was within the medium physical demand level.
13. Based on the FCE results, Dr. Fedder released plaintiff to return to his job with defendant-employer.
14. On March 6, 2006, plaintiff returned to his pre-injury position at the same or greater rate of pay than his pre-injury wages.
15. On May 22, 2006, Dr. Fedder noted that plaintiff was at maximum medical improvement (MMI). Dr. Fedder noted a slightly antalgic gait and a slightly limited range of motion in the left knee, and he assigned a 30% permanent partial impairment rating for plaintiff's left leg. Dr. Fedder continued plaintiff's medium duty work status and advised plaintiff to return to him as needed.
16. On November 30, 2006, at defendants' request, plaintiff presented to Dr. Zane Walsh for a second opinion on his impairment rating. Plaintiff reported occasional stiffness and some residual pain in his left leg. Dr. Walsh assigned a 20% rating for plaintiff's left leg. *Page 6 
17. On May 30, 2007, defendants sent plaintiff a Form 21 Agreement in an effort to pay him permanent partial disability compensation for his left leg injury. However, plaintiff declined to execute the Form 21, and defendants sought a hearing to compel plaintiff to accept an award for his rating.
18. For over two years after his last treatment with Dr. Fedder in May 2006, plaintiff did not seek further medical treatment for his left leg condition.
19. On July 16, 2008, plaintiff presented to Dr. Fedder for follow-up. On this visit, plaintiff complained of pain, discomfort and swelling in his legs if he were on his feet all day. Dr. Fedder noted that plaintiff's left femur fracture was stable and solidly healed. Dr. Fedder advised plaintiff to continue with activities as tolerated and to return to him as needed.
20. On January 14, 2009, upon his request, plaintiff presented to Dr. Ralph Liebelt for another second opinion. Plaintiff reported occasional aching and stiffness in his left knee, with difficulty kneeling and squatting because of limited motion. Dr. Liebelt diagnosed plaintiff with a healed left femoral shaft fracture and an ankylosed left knee with some element of degenerative change, and he assigned a 30% rating for plaintiff's left leg.
21. Since returning to work with defendant-employer in his pre-injury position as a foreman on March 6, 2006, plaintiff has continued in that job without any missed time due to his left leg condition. As a working foreman, plaintiff helps out with some of the heavy lifting, and he has found that his lifting ability is about half or less what it was prior to his injury. Since his injury, he cannot squat or kneel on the job, he has trouble climbing ladders, and he has found that he needs to sit down after standing for one to two hours. Plaintiff often has to have a crew member do what he used to do himself pre-injury, but defendant-employer has not altered the size of plaintiff's crew or made any other accommodations for plaintiff. As of the hearing before the Deputy Commissioner, *Page 7 
plaintiff had not discussed with any of his supervisors any problems he was having doing his job.
22. As Dr. Fedder testified, there is a substantial risk that plaintiff will need further medical treatment in the future for his left knee condition because of his compensable left leg injury, up to and including a possible knee replacement. Dr. Fedder further testified that the femur fracture and the rods used to repair the fracture have caused plaintiff's left knee problems. Dr. Fedder stated that plaintiff's left femur fracture and left knee condition are intertwined and "pretty much the same," and he would expect plaintiff to continue to have a limp on the left, with stiffness and weakness in the left knee.
23. Dr. Fedder further testified that plaintiff's favoring the left leg and thus putting more pressure on the right leg might aggravate plaintiff's pre-existing arthritis in his right knee, but he could not say that overcompensation for the left leg condition more likely than not caused a substantial aggravation of the pre-existing right knee arthritis. Dr. Fedder never treated plaintiff's right knee and his notes show no complaints about the right knee after the initial visit.
24. According to Dr. Fedder, plaintiff's complaints of swelling in his legs in July 2008 is probably a vascular problem. Although Dr. Fedder agreed with plaintiff's counsel that an evaluation by a vascular expert might be helpful, Dr. Fedder did not causally relate any possible vascular condition to the compensable left leg injury.
25. Dr. Fedder has completed his post-operative management of plaintiff's left leg, and plaintiff is at maximum medical improvement for his compensable left femur fracture. As the result of the compensable left femur fracture plaintiff retains a 30% permanent functional impairment to his left leg. *Page 8 
26. The greater weight of the medical evidence of record fails to show that plaintiff's right knee or possible vascular condition are causally related to the compensable injury by accident.
27. For about two-thirds out of the year, plaintiff and his crew are out of town working on jobs. When they are out of town, plaintiff and his crew work seven days a week. When the crew is working out of town, defendant-employer as part of the wage contract pays for employees' travel expenses. Defendant-employer pays for employees' lodging. In 2004-2005 defendant-employer gave plaintiff and each of his crew members $20.00 to $25.00 per day for food, to be used in their discretion, and apparently required no submission of receipts as to how the money was spent. Plaintiff was furnished a company-owned van which he drove to and from his home to local jobs and to transport the crew to out of town jobs. Defendant-employer also gave plaintiff a gas card to buy gas for the van.
28. Defendants did not include the per diem or the van use as income or wages on their Form 22. Plaintiff did not report theper diem or van use as income for tax purposes. However, the Full Commission finds that the use of the company-owned van and theper diem were paid in lieu of wages as part of the wage contract and therefore should be included as wages in the calculation of plaintiff's average weekly wage. Using 243 days per year as the period plaintiff was out of town for two thirds of the year and using $25.00 per day entitles plaintiff to an additional $6,075.00 per year. This addition results in an average weekly wage of $1,126.01 and a compensation rate of $750.67. The maximum compensation rate for 2005 was $704.00, so plaintiff's compensation rate should be adjusted to $704.00. There is no evidence in the record as to the value of the use of the company van.
 *********** *Page 9 
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable left leg injury on August 28, 2005 when he broke his femur while on the job with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff's left knee condition is compensable in this claim because it is directly related to plaintiff's compensable left femur fracture and/or the treatment plaintiff received therefor. N.C. Gen. Stat. § 97-25.
3. Plaintiff's right knee condition and vascular problem are not causally related to his compensable left leg/knee condition. As such, plaintiff is not entitled to payment for the medical treatment of his right knee condition or vascular problem. N.C. Gen. Stat. § 97-25.
4. Plaintiff's average weekly wage for purposes of this claim is $1,126.01, which yields the maximum compensation rate for 2005 of $704.00. The per diem and use of the company van was an allowance made to plaintiff in lieu of wages and specified as a part of his wage contract and thus is deemed part of his earnings in the average weekly wage calculation. N.C. Gen. Stat. § 97-2(5);Greene v. Conlon Construction Co.,184 N.C. App. 364, 646 S.E.2d 652 (2007).
5. Plaintiff is entitled to payment by defendants for the difference between the compensation rate defendants already paid in temporary total disability compensation and the maximum compensation rate of $704.00.
6. Plaintiff has reached maximum medical improvement for his compensable left femur fracture, and he has not shown any substantial diminution of wage-earning capacity related to his compensable left femur fracture. As such, an award of permanent functional *Page 10 
impairment for plaintiff's compensable left femur fracture is appropriate at this time. N.C. Gen. Stat. §§ 97-29, 97-30, 97-31.
7. As the result of the compensable injury by accident, plaintiff sustained a 30% permanent functional impairment for which he is entitled to payment by defendants in the amount of $704.00 per week for 60 weeks. N.C. Gen. Stat. § 97-31(15). However, such award will not foreclose plaintiff's entitlement to further compensation in the future for a separate component for his compensable left knee condition. N.C. Gen. Stat. § 97-25.1.
8. Plaintiff is entitled to have defendants authorize and pay for further medical treatment for his compensable left knee condition as is reasonably required to effect a cure, provide relief and/or lessen the period of plaintiff's disability for said condition. N.C. Gen. Stat. §§ 97-2(19), 97-25.
9. There is a substantial risk of the necessity of future medical treatment for plaintiff's compensable left knee condition, and plaintiff is entitled to an order suspending the limitations period of N.C. Gen. Stat. § 97-25.1 for said condition.
10. Defendants have not defended this claim or prosecuted their position without reasonable grounds. As such, plaintiff is not entitled to attorney's fees per N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee provision below, defendants shall pay plaintiff, in a lump sum, and plaintiff shall accept, a permanent partial impairment rating award commensurate *Page 11 
with a 30% rating for the left leg, for 60 weeks paid at the compensation rate of $704.00 per week. Defendants shall also pay plaintiff in a lump sum the amount owed for the underpayment in the amount of $109.08 per week for compensation already paid to plaintiff.
2. As plaintiff's attorney's fee, defendants shall deduct 25% of the amount due per Paragraph 1 above and pay such portion directly to plaintiff's counsel.
3. Defendants shall, without regard to the limitations period of N.C. Gen. Stat. § 97-25.1, authorize and pay for further medical treatment for plaintiff's compensable left knee condition as is reasonably required to effect a cure, provide relief and/or lessen the period of plaintiff's disability for said condition.
4. If an issue arises as to exact calculation of plaintiff's average weekly wage and the parties are unable to agree on the value of plaintiff's use of the company van, the parties may request a hearing before the Commission on this issue.
5. Defendants shall pay the costs. As part of their costs, if they have not done so already, defendants shall pay an expert witness fee to Dr. Fedder, the amount of which was already set by an Order of the Deputy Commissioner filed January 12, 2010.
This the 16th day of December, 2010.
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ LINDA CHEATHAM COMMISSIONER
 S/___________________ DANNY LEE McDONALD COMMISSIONER *Page 1